# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EDDIE RIVERA,**

        **Plaintiff,**

**-vs-**                                           **Case No. 6:07-CV-1084-ORL-18KRS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This matter came before the Court for consideration without oral argument on the complaint filed by Eddie Rivera seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. No. 12.

**I.  PROCEDURAL BACKGROUND.**

Rivera applied for disability benefits under the Supplemental Security Income for Aged, Blind, and Disabled program ("SSI"), 42 U.S.C. § 1381 *et seq.*, and for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, alleging that he became disabled on June 12, 2001. R. 72-76. Rivera subsequently amended the disability onset date to July 3, 2002. R. 31, 619. The SSA denied Rivera's applications both initially and on reconsideration. R. 604-13. Rivera requested a hearing. R. 57.

An Administrative Law Judge ("ALJ") held a hearing on January 31, 2007. Rivera, who was accompanied by his attorney, and Jane Beougher, a vocational expert (VE), testified at the hearing. R. 616-39.

After the hearing and consideration of the evidence of record, the ALJ found that Rivera had not engaged in substantial gainful activity since July 3, 2002. R. 21. The ALJ concluded that the medical evidence showed Rivera had a back disorder and an affective disorder, which were severe impairments. These impairments did not meet or equal any impairment listed in the SSA regulations. R. 21.

In the review of the evidence of record, the ALJ noted that Dr. Juan Marrero, a treating physician[1], had diagnosed Rivera with chronic low-back pain, unstable left knee, obesity, degenerative joint disease and an adjustment disorder with mixed emotional features with a global assessment of functioning (GAF) score of 45 to 50.[2] R. 23. Subsequently, the diagnoses expanded to include a depressive disorder, mild lumbosacral stenosis, and degenerative disc disease, among other things. R. 23. Rivera used a prescribed cane. R. 23. The ALJ observed that Rivera had not used strong pain medication, and that the side effects from his medication were mild. He further noted that the medical records did not show that Rivera had a markedly diminished range of

---

[1] The records reflect that Marrero was a physician's assistant with the Veterans Administration. *See* R. 173.

[2] The Global Assessment of Functioning ("GAF") scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). *Harold I. Kaplan, M.D. & Benjamin J. Sadock, M.D., Synopsis of Psychiatry* 299 (8th ed. 1998) (hereinafter *Synopsis of Psychiatry*). A GAF rating of 41-50 reflects "Serious symptoms (eg, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (eg, no friends, unable to keep a job). *Id.*

motion or muscle atrophy, and he had not been hospitalized, undergone surgery or sought emergency room treatment for his physical impairments. R. 24.

With respect to Rivera's mental impairments, the ALJ wrote that Rivera had "never been referred to or received any psychiatric or psychological treatment[3], has never been prescribed any psychotropic medications by a psychiatrist or psychologist, or ever experienced any medically documented difficulties with activities of daily living, social functioning, concentration and task persistence, and adaption to work or work-like situations." R. 24. The ALJ concluded that "there is no medical evidence that demonstrates more than mild to moderate limitations" arising from Rivera's mental impairment. R. 24-25.

The ALJ found that Rivera had the residual functional capacity to do the following:

> to lift/carry 10 pounds; to stand/walk for about 2 hours in an 8-hour workday with the use of a cane for ambulation; to sit for about 6 hours in an 8-hour workday; to occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; must avoid climbing ladders/ropes/scaffolds[;] and to perform simple, routine tasks.

R. 22. In reaching this decision, the ALJ gave little weight to the opinions of Drs. DeCastro and Briscoe because they were conclusory and not supported by the medical evidence of record. R. 25-26. Rather, the ALJ relied upon the opinion of a consulting physician, Dr. Estampador-Tan, and the reviewing physicians. R. 25.

The ALJ found that Rivera could not return to his past relevant work because those jobs exceeded his RFC. R. 26. Using the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt.

---

[3] Elsewhere in the decision, the ALJ acknowledged that Rivera had been treated by Dr. Robert DeCastro and Dr. Leonard Briscoe. There is no indication that the ALJ realized that these physicians were, respectively, a psychiatrist and a psychologist. R. 25.

404, Subpt P, App. 2, as a framework, and relying on the testimony of the VE, the ALJ concluded that there was work Rivera could perform, such as food and beverage order clerk, surveillance system monitor, and precision assembler. R. 26-27.[4] Therefore, the ALJ found that Rivera was not disabled. R. 27.

Rivera requested review of the ALJ's decision. R. 6. On April 24, 2007, the Appeals Council informed Rivera that it found no reason to review the ALJ's decision. R. 3-5. Rivera timely sought review of this decision by the United States District Court. Doc. No. 1.

**II.      JURISDICTION.**

As Rivera has exhausted his administrative remedies, this Court has jurisdiction of this matter under 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

**III.     STATEMENT OF FACTS.**

After a thorough review of the record, I find that the pertinent facts are adequately stated in the ALJ's decision and the parties' memoranda of law. Accordingly, I will only summarize the relevant facts to protect Rivera's privacy as much as possible.

Rivera was 42 years old on the alleged onset date of his disability. R. 620. He had completed high school. R. 620. At the hearing, Rivera reported that he was 5'8" tall and weighed 237 pounds. R. 620.

---

[4] Based on a hypothetical question detailing Rivera's exertional limitations, the VE testified that Rivera could not return to any of his past relevant work. R. 636. The VE identified unskilled, sedentary jobs that the hypothetical individual could perform. R. 636-37.

Rivera served in the Army infantry and Army reserves. R. 621-22. After being discharged from the service, he worked as an auditor inventorying merchandise in retail and grocery stores. R. 622-23.

At the hearing, Rivera testified that he started having problems with his back in 1982. R. 625. Starting about 4 years before the hearing, Rivera experienced sharp pain up his neck and down through his legs. Sometimes his knees "locked up," and his left arm became numb. R. 625. His back also "locked up" once or twice a week. R. 629. Pain medication made him drowsy, dizzy and nauseous. R. 626.

Rivera sought treatment from a psychologist for anger and difficulty sleeping. R. 626. Medication did not relieve his symptoms to any significant extent. R. 626.

Rivera estimated that he could sit or stand for 15 to 20 minutes before experiencing muscle spasms in his back or cramps with his knees locking. R. 627-28. He could walk 1 to 2 blocks using a cane, but he sometimes fell. R. 628. He could lift and carry no more than 15 pounds. R. 629. He was able to drive an automobile. R. 621.

In a normal day, Rivera would watch television, read a newspaper, or play solitaire. R. 630, 632. He could make simple meals, such as sandwiches. R. 630. Medication caused him to sleep overly long. R. 631.

The record contains extensive treatment records from the Veterans Administration (VA). R. 162-202, 209-370, 393-573, 576-96. In July 2002, Rivera sought treatment for chronic lower back pain. R. 362. The record reflects that he was 5'8" tall and weighed 236.5 pounds, with a

body mass index (BMI) of 36. R. 362.[5] The diagnosis included chronic low back pain, unstable left knee, degenerative joint disease (DJD), and obesity. R. 364.

X-rays taken in 2004 revealed mild stenosis at L5-S1 with possible encroachment on the nerve root, and an MRI revealed an L5-S1 disc bulge. R. 214, 312; *accord* R. 222. On July 18, 2005, treatment notes reflect that Rivera's condition has worsened, to include pain radiating to his legs and numbness in his feet. R. 243. A straight-leg raising test was positive on the left. An MRI showed L4/5 moderate stenosis with neurogenic claudication and an L5/S1 disc bulge, and mild rotoscoliosis and mild degenerative changes. R. 239, 243. He also had some degenerative changes in his left knee. R. 164-65. In September 2005, an MRI revealed disc bulges at L2-3 and L5-S1. The impression was that Rivera had lumbar degenerative disc disease. R. 415.

Treatment records reflect that Rivera consistently complained of back and knee pain. *See, e.g.,* R. 222, 288, 322, 341, 349, 353, 407, 587. The records also repeatedly reiterate the diagnosis of obesity. *See, e.g.,* R. 228, 267 (BMI of 36+), 293, 304, 322, 325, 337, 348, 540.

Treatment for pain included use of naproxen, Robaxin (methocarbamol), a Medrol dose pack, Flexeril (cyclobenzaprine), Tylenol with codeine, piroxicam, a TENS unit, intradermal injections, and etodolac. Medication occasionally alleviated the pain to some extent. R. 263, 265-66, 288, 313, 325, 335, 337, 339, 357. He also had physical therapy. *See, e.g.,* R. 284, 314-16. In

---

[5] "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" Soc. Sec. Rul. 02-01p, 2000 WL 628049, at * 2 (Sept. 12, 2002).

March 2004, a lumbar brace and cane were prescribed. R. 319-20. In September 2006, the VA authorized Rivera to obtain a three-wheel scooter and a lift. R. 127.

Rivera also complained of depression as early as July 2002. R. 359; *accord* R. 347. Robert O. DeCastro, a psychiatrist, evaluated Rivera in May 2003. R. 345-47. At that time, Rivera reported that he was depressed, anxious and had difficulty sleeping. Dr. DeCastro's impression was that Rivera had an adjustment disorder with mixed emotional features with a GAF score of 60.[6] He prescribed trazodone[7], counseling, and referred Rivera to a psychologist for testing. R. 346-47. Dr. DeCastro continued to evaluate Rivera on a regular basis. *See, e.g.,* R. 178, 193-95, 219-21, 224-26, 317, 326-27, 332, 404-06, 419, 418, 529-30, 582-83. Dr. DeCastro subsequently prescribed temazepam[8] and sertraline[9]. R. 219. In May 2005, Dr. DeCastro assessed Rivera's GAF score as 50, and in July 2006 assessed his GAF score as 48. R. 178, 405; *accord* R. 582. In April 15, 2006, Dr. DeCastro opined in a questionnaire that Rivera was permanently unable to work because of a major depressive disorder. R. 392. His impression remained the same as of December 7, 2006. R. 574.

---

[6] A GAF score between 51 and 60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition* 32 (4th ed. 1994) (hereinafter the "*DSM-IV*").

[7] Trazodone is a psychotropic medication. *See* Pagliaro, *Psychologist's Psychotropic Drug Reference* 666 (1998)(hereinafter PPDR), found online at http://books.google.com/books?id= n2e2aAYnZYkC&pg=PA607&lpg=PA607&dq=psychotropic+trazodone&source=web&ots=xq43 Mu7F_3&sig=WSS1mCqgn3hOOcXRZD9qF_ht9oY&hl=en&sa=X&oi=book_result&resnum=5 &ct=result.

[8] Temazepam is a psychotropic medication. *See* PPDR at 51.

[9] Sertraline is a psychotropic medication. *See* PPDR at 574-75.

In August 2003, Leonard T. Briscoe, Psy.D., a psychologist, examined Rivera and administered a psychological test. R. 331, 334-35, 343. Dr. Briscoe concurred with Dr. DeCastro's diagnosis, but rated Rivera's GAF at that time as between 45 and 50. R. 343. Dr. Briscoe observed that Rivera appeared anxious and slightly dysphoric, but his insight and judgment were good. R. 328. Dr. Briscoe also continued to treat Rivera on a regular basis. *See, e.g.,* R. 174, 179-80, 196-98, 216-18, 223, 227, 242, 245-46, 253-54, 255-57, 310-11, 318, 323, 393. In November 2003, Dr. Briscoe opined that Rivera had a depressive disorder with a GAF of 55 to 60, decreasing to 45 to 50 by August 2003. R. 180, 328, 546. In December 2006, Dr. Briscoe opined that Rivera would be permanently unable to work due to major depression and chronic lumbar disc disease. R. 575.

Josephine Estampador-Tan, M.D., examined Rivera at the request of the SSA in December 2004. R. 206-8. At that time, Rivera complained of back pain radiating down the left side to his foot, and down the right side to his knee. R. 206. He weighed 244 pounds. R. 207. Dr. Estampador-Tan observed that Rivera walked with a limping gait using his cane. Upon examination, she noted moderate to severe muscle spasms in the lumbosacral area. Muscle and grip strength were essentially normal, with no atrophy. Range of motion in his lumbar spine was decreased. R. 207.

Dr. Estampador-Tan's assessment was that Rivera had low back pain syndrome and possible lumbar radiculopathy. She opined that Rivera could sit at least 6 hours and stand or walk 2 hours a day using his cane, with frequent breaks. He could occasionally lift 20 pounds and frequently lift 10 pounds. Pushing and pulling in his lower extremities was limited. He could not

climb ramps, stairs, ladders, ropes or scaffolds. He could not balance, crouch or crawl, but he could occasionally kneel and stoop. He should avoid extreme temperatures, vibration, humidity/wetness and hazards such as machinery and heights. R. 207.

In November 2004, Eric Weiner, Ph.D., prepared mental RFC assessments based on a review of Rivera's records. R. 136-53. Dr. Weiner concluded that Rivera would have moderate limitations in activities of daily living and maintaining concentration, persistence and pace. He would have mild limitations in social functioning. R. 150, 136. He would also have a moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 137.

In January 2005, Todd Patterson, D.O., prepared a physical RFC assessment based on a review of Rivera's medical records. R. 154-61. He concluded that Rivera could lift up to 20 pounds occasionally and 10 pounds frequently. He could sit, stand or walk about 6 hours a day, using an assistive device for balance. He could only push and pull with foot controls occasionally. R. 155. He could never climb ladders, ropes or scaffolds, and he could only occasionally kneel, crouch or crawl. R. 156. He should avoid concentrated exposure to hazards. R. 158.

In August 2005, Glenn Brigety, D.O., also prepared a physical RFC assessment based on a review of Rivera's medical records. R. 384-91. He essentially concurred with Dr. Patterson, except that he found that Rivera could stand or walk at least 2 hours a day. R. 385.

**IV.    STANDARD OF REVIEW.**

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**V.     ANALYSIS.**

Rivera contends that the ALJ erred in considering the functional limitations arising from his mental impairments because he failed to give significant weight to the opinions of Drs. DeCastro and Briscoe, who were Rivera's treating psychiatrist and psychologist, respectively. With respect to his physical RFC, Rivera argues that the ALJ erred by failing to consider the effect his obesity had on his functional capacity, including his complaints of pain. Finally, Rivera submits that the ALJ did not properly assess his credibility, including his complaints of pain and other subjective symptoms.

-12-

I turn first to the ALJ's treatment of the opinions of Drs. DeCastro and Briscoe. The opinion of a treating physician must be "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2)). Good cause has been found "where the doctor[s'] opinion[s] [were] not bolstered by the evidence, . . . where the evidence supported a contrary finding[,] . . . [or] where the doctors' opinions were conclusory or inconsistent with their own medical records." *Id*. (internal citations omitted). The ALJ must articulate the reasons for giving less weight to the opinion of the treating physician. *Id.* However, because the ultimate determination of disability for purposes of the Act is reserved to the Commissioner, conclusions by a treating physician that a claimant is "disabled" are not binding on the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see also Miller v. Barnhart*, 182 Fed. Appx. 959, 964 (11th Cir. 2006); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1255 (M.D. Fla. 2005).

The ALJ's finding that Rivera "had never been referred to or received any psychological treatment [and] has never been prescribed any psychotropic medications by a psychiatrist or psychologist . . . ," R. 24, is incorrect. Although the ALJ acknowledged that Dr. DeCastro and Dr. Briscoe had treated Rivera, R. 25, he referred to them as "treating physicians." R. 25. It is, therefore, unclear whether the ALJ recognized that Dr. DeCastro is a psychiatrist and Dr. Briscoe is a psychologist.

Moreover, the ALJ's decision is bereft of discussion of the extensive treatment records prepared by Dr. DeCastro and Dr. Briscoe, other than a cursory reference to the diagnosis of an adjustment disorder with mixed emotional features and a GAF of 45 to 50. R. 23. It is, therefore,

not surprising that the ALJ found that Dr. DeCastro and Dr. Briscoe's opinions were not supported by medical evidence of record.  Good cause does not support that conclusion in light of the failure of the ALJ to review Drs. DeCastro and Briscoe's treatment records.  Accordingly, remand is required to permit the Commissioner to reevaluate Rivera's mental impairment based on consideration of the record as a whole.[10]

On remand, the Commissioner should also specifically consider the effect Rivera's obesity played in exacerbating his pain and limiting his functional ability.  Social Security Ruling 02-01p states that obesity is considered a medically determinable impairment, and it reminds adjudicators to consider its effect at each step in the sequential evaluation process. *Id.*, at * 3. It further instructs adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. *Id.,* at *1, *6. It notes that obesity can cause symptoms, such as pain or fatigue, that could limit functioning. *Id.,* at *4. The effects of obesity are to be considered under the musculoskeletal, respiratory and cardiovascular body system listings, but also at other steps of the sequential evaluation process, including when assessing an individual's RFC.  *Id.*

In the present case, Rivera complained of pain and instability in his knee, which is a weight-bearing joint.  Case law acknowledges that obesity can exacerbate the pain and limitations

---

[10] Rivera asks that the Court remand the case and direct the SSA to award him benefits.  A court may order an award of benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  Because the Commissioner has not yet considered the treatment records of Dr. DeCastro and Dr. Briscoe, he has not considered the essential evidence.  Therefore, an award of benefits is not appropriate at this time.

in a weight-bearing joint. *See Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991)(recognizing profound effect excess weight has on an arthritic weight-bearing joint). Accordingly, on remand the Commissioner must consider the impact of Rivera's obesity in evaluating his credibility and RFC.

## VI.    RECOMMENDATION.

It is respectfully recommended that the Court **REVERSE** the decision of the Commissioner and **REMAND** the case for further proceedings. I further recommend that after the Court issues its ruling on this Report and Recommendation, it direct the Clerk of Court to issue a judgment consistent with its order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended  in Orlando, Florida on July 22, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties